279 P.3d 1191

**FLOOD CONTROL DISTRICT OF MARICOPA COUNTY, Plaintiff/Counterclaimant/Appellant/Cross–Appellee,**

**v.**

**PALOMA INVESTMENT LIMITED PARTNERSHIP, a limited partnership; Prudential Insurance Company of America, a New Jersey corporation; Paloma Ranch Joint Venture, a joint venture; Hartford Fire Insurance Company; Gillespie Dam Investments, L.L.C., a limited liability company; Charter, L.L.C., a limited liability Company, Defendants/Counterdefendants/Appellees/Cross–Appellants.**

**No. 1 CA–CV 10–0106.**

Court of Appeals of Arizona, Division 1, Department B.

May 31, 2012.

---

Swenson, Storer, Andrews, & Frazelle, P.C. By Michael J. Frazelle, Phoenix, Helm & Kyle By John D. Helm, Roberta S. Livesay, and Jeffrey L. Hyrcko, Tempe, Attorneys for Appellant/Cross–Appellee/Plaintiff/Counter–Defendant.

Mersch, Clark, & Rothschild, P.C. By J. Emery Barker & Scott H. Gann, Tucson, Haralson, Miller, Pitt, Feldman & McNally, LLC By Stanley G. Feldman, Thomas G. Cotter, & Rebecca A. Reed, Tucson, Attorneys for Appellees/Cross–Appellants.

## OPINION

KESSLER, Judge.

¶ 1 This appeal relates to the obligation of the Flood Control District of Maricopa County ("District") to indemnify owners of the Gillespie Dam ("Dam Owners") for a settlement the Dam Owners entered into with farmers injured by a 1993 breach of the Dam ("Farmers"). We hold, inter alia, that: (1) An agreement by which the District agreed to indemnify the Dam Owners against "all liability" covers all liability, including liability subject to a covenant not to execute between the Dam Owners and the Farmers; (2) The Dam Owners' indemnity claim was not barred by Arizona's notice of claim statute or the statute of limitations; (3) Pursuant to Arizona Rule of Civil Procedure 68, the superior court correctly declined to award expert witness fees as a sanction when the claimant offered no evidence that the fees had a rational nexus to the presentation of evidence at trial; (4) Rule 68 does not require apportionment of sanctions among parties, but a trial judge has discretion to allocate such sanctions among the parties; and (5) The superior court erred in denying the Dam Owners prejudgment interest on the settlement amount with the Farmers but did not err in denying the Dam Owners' claims for prejudgment interest on their request for attorneys' fees. Accordingly, we affirm the judgment in all respects except we reverse and remand to the superior court to consider allocation of Rule 68 sanctions and to determine the amount of prejudgment interest on the Farmers' settlement amount, accruing as of the date of the judgment approving the Farmers' settlement with the Dam Owners.

## FACTUAL AND PROCEDURAL HISTORY

¶ 2 In the early 1980s, the District undertook a flood control project in the floodplain of the Gila River from 91st Avenue to the Gillespie Dam, approximately thirty-six miles. Part of the project involved clearing sections of the river bed owned by the Dam Owners immediately upstream from the Dam. The District did not have sufficient funds for the project so it requested free easements from owners of land within the clearing zone. The Dam Owners granted the District an easement over 26.8 acres of that land, in exchange for the District's agreement to construct and maintain the flood control measures and to indemnify the Dam Owners, as described *infra*. In 1991, the District purchased the entire 26.8 acre plot.

¶ 3 In 1993, the Gila River flooded and the Gillespie Dam breached, causing extensive downstream flood damage to the Farmers' properties. The Farmers filed a complaint for damages against the Dam Owners and the District.[1] In 1997, the District filed a complaint seeking a declaratory judgment that the indemnity clause in the easement agreement did not apply to the claims the Farmers brought against the Dam Owners. The Dam Owners filed a counterclaim seeking compensation pursuant to the indemnity agreement and damages based on a separate allegation that the District caused the breach of the Gillespie Dam.[2]

¶ 4 The District's declaratory judgment case was consolidated for trial with the Farmers' suit against the Dam Owners and the District. The jury found that the District did not cause the Dam to fail, but that it was ten percent at fault for the damage to the Farmers caused by the Dam's breach.[3]

1. Industrial Risk Insurers also filed suit for damages it incurred from the flood and dam breach. The District settled that suit in 1998 for $2.2 million.

2. New parties, not beneficiaries of the indemnity agreement, joined the counterclaim, seeking to recover damages for the District's alleged fault in contributing to the breach of the dam. These parties included Gillespie Dam Investments, L.L.C., ("GDI"), Charter, L.L.C. ("Charter"), and Paloma Water Users, Inc. ("PWUA"). The counterclaimants alleged that PWUA had completely assigned its interest in the litigation to Charter,

which sued in its own right and as assignee of PWUA.

3. On appeal from the judgment on allocation of fault, we affirmed the jury's determination that the District was a partial cause of the Farmers' damages. *A Tumbling–T Ranches v. Flood Control Dist. of Maricopa Cnty. (A Tumbling–T II)*, 222 Ariz. 515, 532, ¶ 44, 217 P.3d 1220, 1237 (App.2009). As we explained in that case, the Farmers argued to the jury that even if the District did not cause the dam to fail, its flood control project "contributed to the massive shift of sediment downstream, which reduced the ca-

It found the Dam Owners were eighty percent at fault for the Farmers' damages on the theory that the Dam Owners negligently maintained the dam.

¶ 5 After the liability finding but before the jury decided damages, the Dam Owners and the Farmers settled the dispute between them with a *Damron/Morris* agreement. *United Servs. Auto. Ass'n v. Morris*, 154 Ariz. 113, 741 P.2d 246 (1987); *Damron v. Sledge*, 105 Ariz. 151, 460 P.2d 997 (1969). The Dam Owners agreed to pay $3.3 million to the Farmers, consented to a $14.75 million judgment, and agreed to either assign their indemnity claims against the District to the Farmers if the Farmers so requested or to permit the Farmers to assert their claim against the District by joining in the Dam Owners' indemnity action. In exchange, the Farmers agreed not to execute on the judgment against the Dam Owners beyond the $3.3 million.

¶ 6 While approval of that settlement was pending, trial was held on the damages the flood caused the Farmers. The jury awarded the Farmers $5.36 million, of which $536,000 was assessed against the District based on the earlier allocation of fault.

¶ 7 The superior court then determined that the settlement the Dam Owners had negotiated with the Farmers was reasonable and entered judgment consistent with the settlement. We affirmed the reasonableness of the settlement between the District and the Farmers, but declined to decide whether all of the damages awarded in that stipulated judgment were within the scope of the indemnification agreement. Rather, we left the scope of the indemnity agreement to be determined in the remaining portion of the declaratory judgment action. *A Tumbling–T Ranches v. Flood Control Dist. of Maricopa Cnty. (A Tumbling–T III)*, 220 Ariz. 202, 208, 213, ¶¶ 15, 17, 29, 32, 42, 204 P.3d 1051, 1057, 1062 (App.2008).[4]

¶ 8 The litigation then entered what appears to be its final stage—the declaratory judgment claim between the Dam Owners and the District on the scope of the indemnity agreement, the Dam Owners' counterclaims against the District and related matters. After hearing testimony and receiving exhibits, the superior court earlier had determined that the indemnity agreement covers liability for all damages arising out of the flood, except for damages caused by intentional acts or omissions by the Dam Owners. After the jury's verdicts on liability and damages, the superior court then held that the indemnity agreement obligated the District to indemnify the Dam Owners for $14.75 million, the *full amount of the stipulated judgment*, despite the fact that the jury had decided the Farmers' damage was only $5.36 million. Finally, the superior court awarded attorneys' fees to the Dam Owners for their defense of the underlying litigation and Rule 68 sanctions in favor of the District and against certain Dam Owners (not parties to the indemnity agreement) who failed to recover against the District. The District filed a timely notice of appeal and the Dam Owners filed a timely notice of cross appeal. This Court has jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution and Arizona Revised Statutes ("A.R.S.") section 12–2101(A)(1) (Supp. 2011).

## ANALYSIS

¶ 9 On appeal the District argues that: (1) The indemnity agreement does not cover the damages to the Farmers resulting from the breach of the Dam, does not apply to losses beyond that paid by the Dam Owners to the Farmers as part of the settlement ("phantom damages"), and only applies to damages caused by the District's acts within the easement prior to its purchase of the easement in 1991; (2) The Dam Owners may not enforce the Indemnity Agreement because they failed to comply with Arizona's notice of claim statute and the indemnity claim is time-barred; (3) The superior court erroneously denied part of its claim for expert witness fees pursuant to Rule 68(g); and (4)

---

pacity of the downstream channel and created an increased risk of future flooding." *Id.* at 523, ¶ 10, 217 P.3d at 1228.

**4.** We refer to this appellate decision as *A Tumbling–T III* because the notice of appeal was filed after the notice of appeal was filed in *A Tumbling–T II*.

The superior court erroneously failed to apply the Rule 68(g) sanction to PWUA.

¶ 10 On their cross appeal, the Dam Owners argue that the superior court erroneously: (1) Denied their claim for pre-judgment interest; (2) Denied a request for additional attorneys' fees based on a contingent fee agreement between one of the Dam Owners and counsel; and (3) Failed to apportion expert witness fees among the parties required to pay them.

## I. The superior court correctly concluded that the indemnity agreement applies to all liability arising from the District's use of the easement.

### A. The superior court correctly determined that the indemnity covers all liability.

¶ 11 We now address the issue left unanswered in *A Tumbling–T III*, 220 Ariz. at 209, 211, ¶¶ 23, 29, 204 P.3d at 1058, 1060: Whether the indemnity agreement between the District and the Dam Owners applies to the entire liability to which the Dam Owners stipulated in the settlement with the Farmers, including the $11.45 million the Dam Owners will not have to pay pursuant to the covenant not to execute. In other words, is the District liable for the difference between the $14.75 million stipulated judgment and the $3.3 million the Dam Owners have to pay the Farmers? Based on this record and the language of the easement and indemnity agreement, we affirm the superior court's ruling that the indemnity agreement covers all liability of the Dam Owners related to the dam failure, including the amount subject to the covenant not to execute.

¶ 12 As we explained in *A Tumbling–T III*, 220 Ariz. at 209–10, ¶¶ 23, 26–28, 204 P.3d at 1058–59, the language of the indemnity agreement determines the extent of the indemnitor's liability to the indemnitee and in the insurance context, an indemnity against "liability" covers even that portion of a stipulated judgment against the insured that is subject to a covenant not to execute. In other commercial indemnity contexts, however, parties to an indemnity agreement negotiated at arm's length might not intend the

term "liability" to include any stipulated amount of liability which the indemnitee would not have to pay pursuant to a covenant not to execute. Moreover, we explained that the extent of the indemnitor's liability in such a settlement is a fact question. *Id.* at 211, ¶¶ 28–29, 204 P.3d at 1060.

¶ 13 Because the indemnity obligation is contractual in nature, we begin our analysis with the language of the agreement. *See Grosvenor Holdings, L.C. v. Figueroa*, 222 Ariz. 588, 593, ¶ 9, 218 P.3d 1045, 1050 (App. 2009). The indemnity agreement, in pertinent part, provided:

> [Dam Owners] ... hereby grant and convey unto the [District] ... a non-exclusive right-of-way easement [1,000 feet wide] ... across the [26.8 acres owned by Dam Owners] ... to clear, erect, construct, reconstruct, replace, repair, maintain and use a flood control channel and other flood control improvement works....
>
> Except for the intentional acts or omissions of [Dam Owners], [Dam Owners] shall not be liable for any ... action, loss, damage or injury (including death) of any kind or nature to any person or property arising from any use, nonuse, repair, disrepair, maintenance, condition or occupancy of the [easement property] by [the District] ... *or caused by or arising from any act or omission of [the District] or [Dam Owners] as landowner* ... and [the District] further agrees hereby to indemnify and hold [Dam Owners] entirely free and harmless *from any and all liability* for any fine, suit, proceeding, claim, demand, action, loss, damage ... and from all costs and expenses arising therefrom including, without limitation, any attorneys' fees and court costs incurred by [Dam Owners] in defending against any such liability.

(Emphasis added.)

¶ 14 As such, the indemnity clause is worded in broad terms, specifically covering "all liability" from a claim falling within the scope of the indemnity. Indemnification agreements covering "all liability" should be construed as broadly as they are written and cover all liability without any limitation not expressly stated by the agreement. *See In re New York City Asbestos Litigation*, 41

A.D.3d 299, 301, 838 N.Y.S.2d 76 (N.Y.App. Div.2007); *see also Levine v. Shell Oil Co.*, 28 N.Y.2d 205, 321 N.Y.S.2d 81, 269 N.E.2d 799, 802–03 (1971) (holding that the plain meaning of a clause covering "any and all liability" is coextensive with one covering liability "of whatsoever kind or nature" and that failure to interpret such a clause broadly would render it a nullity).

¶ 15 Similarly, "liability" broadly encompasses liability subject to a covenant not to execute. Liability is "legal responsibility to another." Black's Law Dictionary 932 (8th ed. 2004). "Indemnification against liability applies once liability for a cause of action is established; the indemnitee is not required to make actual payment." *MT Builders, L.L.C. v. Fisher Roofing, Inc.*, 219 Ariz. 297, 302, ¶ 11, 197 P.3d 758, 763 (App. 2008) (citing *INA Ins. Co. of N. Am. v. Valley Forge Ins. Co.*, 150 Ariz. 248, 253, 722 P.2d 975, 980 (App.1986)); Thus, in *Hauskins v. McGillicuddy*, 175 Ariz. 42, 852 P.2d 1226 (App.1992), we held that under a statute giving the State a right to liability indemnity against an attorney who failed to properly file a notice of claim, a settlement that included a covenant not to execute did *not* preclude indemnity. 175 Ariz. at 45, 51–52, 852 P.2d at 1229, 1235–36. As we explained, the duty of indemnity for liability applies once liability is established and does not require the indemnitee to make a payment. *Id.* at 51, 852 P.2d at 1235. For this reason, an indemnity agreement covering liability applies with equal force regardless of whether the liability has been or will ever be paid. *See MT Builders*, 219 Ariz. at 302, ¶ 11, 197 P.3d at 763 (citing *INA*, 150 Ariz. at 253, 722 P.2d at 980).

¶ 16 By contrast, an indemnity agreement that expressly covers only "loss," as opposed to "liability," does not cover sums not paid. *MT Builders*, 219 Ariz. at 302, ¶ 11, 197 P.3d at 763 (citation omitted); *INA*, 150 Ariz. at 253, 722 P.2d at 980. We enforce the agreement according to the language used by the parties. *MT Builders*, 219 Ariz. at 302, ¶ 12, 197 P.3d at 763 (citation omitted); *INA*, 150 Ariz. at 253, 722 P.2d at 980.

¶ 17 In this case, the District agreed to indemnify the Dam Owners against "all liability." As the cases cited above state, "all liability" means just that: all sums covered by any judgment arising from a covered claim against the Dam Owners, regardless of whether the Dam Owners have paid the judgment or any part of it pursuant to a covenant not to execute.

¶ 18 The District asserts that the Dam Owners are not liable for any damages that are subject to the covenant not to execute. We disagree. Arizona recognizes a distinction between a release, which eliminates or destroys liability, and a covenant not to execute, which is simply an agreement by the judgment creditor not to enforce the judgment. *A Tumbling–T III*, 220 Ariz. at 209, ¶ 22, 204 P.3d at 1058. Here, the agreement between the Farmers and Dam Owners did not contain a release and expressly provided that the Farmers were not releasing the Dam Owners from liability. A covenant not to execute has no effect in this context on a judgment or the liability it creates. *Id.* at ¶¶ 22–23. If the judgment creditor executes on the judgment in breach of the covenant, the judgment debtor has an action for contract damages. *Id.* at ¶ 22. Conversely, if the judgment debtor fails to pay any amount not subject to the covenant not to execute, the judgment creditor may seek to rescind the settlement or enforce it. Of course, if the settlement is rescinded, the judgment debtor may face greater liability than agreed upon in the settlement, for which, in a case such as this, it would seek indemnification from the indemnitor. We reject the District's contention that a covenant not to execute transforms an unpaid judgment into anything other than a liability.

¶ 19 The District argues that an indemnity is limited to reimbursement of amounts actually paid by the indemnitee, absent language that clearly and unequivocally states otherwise. As we have held, an indemnity against "liability" plainly covers all liability, paid or unpaid. Moreover, the cases on which the District relies do not address the distinction noted above between indemnity agreements which cover "any liability" and those which cover only "loss." Rather, the cases the

District cites merely provide that unless otherwise stated, an indemnification agreement does not cover losses caused by the indemnitee's active negligence. *Washington Elem. Sch. Dist. No. 6 v. Baglino Corp.*, 169 Ariz. 58, 61–62, 817 P.2d 3, 6–7 (1991); *Pioneer Roofing Co. v. Mardian Constr. Co.*, 152 Ariz. 455, 474, 733 P.2d 652, 671 (App.1986); *Estes Co. v. Aztec Constr., Inc.*, 139 Ariz. 166, 168–69, 677 P.2d 939, 941–42 (App.1983); *Allison Steel Mfg. Co. v. Superior Court*, 22 Ariz.App. 76, 79–80, 523 P.2d 803, 806–07 (1974); *Royal Properties, Inc. v. Arizona Title Ins. & Trust Co.*, 13 Ariz.App. 376, 377–78, 476 P.2d 897, 898–99 (1970). These cases support the proposition that to overcome the bar against indemnification for an indemnitee's active negligence, the language of an indemnification agreement must be clear and unequivocal. *E.g., Pioneer Roofing*, 152 Ariz. at 474, 733 P.2d at 671. However, they do not address whether the same rule applies to indemnification for the portion of a judgment subject to a covenant not to execute. Moreover, the cases also support the principle that "where parties bind themselves by a lawful contract and the terms of the contract are clear and unambiguous, a court must give effect to the contract as written." *Estes*, 139 Ariz. at 168, 677 P.2d at 941. Here, the District contracted to indemnify the Dam Owners for all liability, not just losses, excluding only damages caused by the intentional acts or omissions of the Dam Owners.

¶ 20 The District also contends that we should decline to construe this agreement as a liability indemnity agreement because no rational indemnitor would agree to indemnify a judgment given in connection with a *Morris/Damron* agreement. We disagree for several reasons.

¶ 21 First, as we explained in *A Tumbling–T III*, whether parties to a non-insurance indemnity agreement intended for the word "liability" to include payment of amounts subject to a covenant not to execute may be a fact question. 220 Ariz. at 210–11, ¶¶ 25–29, 204 P.3d at 1059–60. Here, on remand following our decision in *A Tumbling–T III*, the parties informed the superior court there was no issue of fact which needed to be resolved in ruling on the extent of the indem-

nity agreement and the court should simply look at the four corners of that agreement to find the parties' intent. The court then proceeded to interpret the agreement based on its language as a matter of law. That there was no factual issue involved is consistent with what the District conceded during the liability phase of the litigation, when it stated there was little to no evidence concerning the intent of the parties to the indemnity agreement and it had to be "intellectually honest [by] . . . conceding to [the court] that probably the most important factor . . . [on] the scope of any potential indemnity obligation . . . is governed by the language of the indemnity clause itself."

¶ 22 Thus, in the absence of parol evidence of the intent of the parties to the agreement, nothing in the agreement causes us to conclude that the terms "all liability for any fine, suit, proceeding, claim, demand, action, loss, damage or injury" meant anything other than what they say. We construe the agreement so as to give every word meaning and avoid making any word superfluous. *Tenet Healthsystem TGH, Inc. v. Silver*, 203 Ariz. 217, 221, ¶ 11, 52 P.3d 786, 790 (App.2002). This broad language includes liability beyond what the Dam Owners might be obligated to pay; if the parties desired to limit the District's liability to what the Dam Owners actually paid, they would have limited the language accordingly. Construing the above language to mean only what the Dam Owners actually pay would make the words "loss" and "injury" superfluous because the same obligation could be accomplished by wording the agreement to cover "all liability for any . . . damage."

¶ 23 Second, contrary to the District's argument, a liability indemnity is not beyond the scope of rational commercial agreements. An indemnitee may insist on receiving a liability indemnity to allow it to obtain and enjoy the protection of a *Morris/Damron* agreement in the event that the indemnitor does not defend the indemnitee on a covered claim. An indemnitor that intends to perform its indemnity obligations may not object to agreeing to indemnify against a liability. A liability indemnity is not an inherently absurd legal creation requiring us to ignore

the parties' choice in this case to provide that the indemnification would cover "all liability." [5]

## B. The superior court correctly construed the indemnity agreement.

¶ 24 The District contends that the superior court erroneously construed the indemnity agreement in several ways: (1) To cover the Dam Owners' negligent failure to maintain the dam; (2) To cover liability for acts occurring anywhere on the easement property; and (3) For acts between September 1, 1981 and April 19, 2000. The District argues that the indemnity only covers liability arising from its own activities on the 26.8 acre easement, the indemnity clause does not cover damages from the Dam Owners' failure to properly maintain the dam, and, in any event, the indemnity clause was terminated by operation of merger when the District purchased the easement. We disagree.

### 1. Scope of Indemnity

 ¶ 25 We start with what we see as a primary issue on the scope of the indemnity—whether the agreement applied to failure of the Dam Owners to maintain the dam. This is a crucial issue because the *Morris/Damron* agreement and the stipulated judgment were premised on the verdict that the Dam Owners were eighty percent at fault for the Farmers' damages and the District did not cause the Dam to fail. To determine whether the indemnity agreement covered the Dam Owners' acts which led to the dam failure we must examine the terms of the indemnity agreement and the basis of the

Dam Owners' liability to the Farmers. In other words, the District had to indemnify the Dam Owners for the stipulated judgment only if the basis for that judgment was covered by the terms of the indemnity agreement. *See Colorado Cas. Ins. Co. v. Safety Control Co., Inc.*, 228 Ariz. 517, 523–24, ¶¶ 20, 23, 25, 269 P.3d 693, 699–701 (App.2012) (holding that a *Morris/Damron* agreement does not create coverage that an insured did not purchase and that the insurer is only liable if the judgment constituting a liability fell within the terms of the policy, thus requiring a court to determine if the facts established by a verdict or stipulated judgment creating a liability by the insured were within the terms of the policy).

¶ 26 Here, the event giving rise to the judgment to which the Dam Owners stipulated was the dam failure. In the liability trial that preceded the judgment, the Farmers' theory against the Dam Owners was that they were negligent in constructing, maintaining, and/or operating the Dam. *A Tumbling-T II*, 222 Ariz. at 522, ¶ 7, 217 P.3d at 1227. The trial court instructed the jury that the Dam Owners had a non-delegable duty to maintain the dam in a safe condition. The Farmers argued to the jury that the basis for their claim against the Dam Owners was that they did not maintain the dam properly.

¶ 27 The scope of the indemnity agreement included any liability of the Dam Owners for failure to maintain the dam except for their own intentional acts or omissions. As noted above, both parties told the trial court that the scope of the indemnity had to be deter-

---

5. In the usual *Morris/Damron* situation, the indemnitee's settlement with the claimant ends the proceedings in the underlying action before the jury determines liability and assesses damages. By contrast, the settlement in this case did not end the underlying litigation because the Farmers also had sued the District for its own actions. In that proceeding, which continued after the Dam Owners' settlement with the Farmers, the jury found the total damage the Farmers incurred was only $5.36 million, about a third of the judgment the Dam Owners stipulated to in their prior settlement with the Farmers.

Thus, the amount of the settlement for which the District had to indemnify was greater than the later jury verdict establishing the Farmers' damages. This raises the possibility that in the

*Morris/Damron* context, a court might approve a settlement as reasonable even though a jury after a full trial later finds the plaintiff's damages were significantly lower than the settlement amount. Although this appears to be consistent with *Morris/Damron* philosophy, it can work an injustice.

However, the District does not complain in this appeal that the Dam Owners' settlement with the Farmers was unreasonable on this record. Indeed, the District had an opportunity to contest the amount of the settlement and we later affirmed the superior court's approval of the settlement. 220 Ariz. at 208, ¶ 19, 204 P.3d at 1057. Accordingly, we do not address whether a possible disconnect between a settlement amount and damages actually determined by a jury is a practical problem under *Morris* and *Damron*.

mined based only on the four corners of the document. In construing contractual intent from a document, we must give meaning to all parts of the contract, making no word superfluous or omitting any word. *Tenet,* 203 Ariz. at 221, ¶ 11, 52 P.3d at 790.

¶ 28 The language of the indemnity agreement is very broad, including liability except for intentional acts or omissions:

> Except for the intentional acts or omissions of [Dam Owners], [Dam Owners] shall not be liable for any . . . action, loss, damage or injury (including death) of any kind or nature to any person or property arising from any use, nonuse, repair, disrepair, maintenance, condition or occupancy of the [easement property] by [District] *or caused by or arising from any act or omission of [the District] or [Dam Owners] as landowner* . . . and [the District] further agrees hereby to indemnify and hold [Dam Owners] entirely free and harmless *from any and all liability* for any fine, suit, proceeding, claim, demand, action, loss, damage . . . and from all costs and expenses arising therefrom including, without limitation, any attorneys' fees and court costs incurred by [Dam Owners] in defending against any such liability.

(Emphasis added.) Thus, the indemnity extends to all liability "caused by or arising from any act or omission" of the Dam Owners "as landowner."[6] We interpret the word "landowner" as including the Dam Owners' ownership of the dam. This conclusion is supported by the fact that in a paragraph preceding the above-quoted indemnity clause, the agreement provided that

> [Dam Owners] may, but shall not be obligated to modify, repair, retain, improve, restore or alter Gillespie Dam or Gillespie Canal or any other existing or future improvements thereof.

There would have been no reason to include this language unless the parties had intended that the indemnity included any negligent failure to maintain the dam.

¶ 29 Thus, we conclude that since the jury's liability verdict that underlay the stip-

ulated judgment against the Dam Owners was based on the latter's negligent maintenance of the dam, the judgment fell within the District's agreement to indemnify the Dam Owners for the latter's negligent acts.

¶ 30 The District contends it is not liable on the indemnity because the jury found the District did not cause the dam to breach. We disagree. The indemnity agreement does not limit the District's indemnity only to its own acts, and did not make indemnity dependent upon the District's negligence. We decline to judicially engraft the indemnity agreement with restrictions not found in its language.

¶ 31 The District also argues that the law of the case demands we construe the indemnity to apply only if the District caused the dam to breach. We disagree. The doctrine referred to as "law of the case" describes the judicial policy of refusing to reopen questions previously decided in the same case by the same court or a higher appellate court. *Powell–Cerkoney v. TCR–Montana Ranch Joint Venture,* II, 176 Ariz. 275, 278, 860 P.2d 1328, 1331 (App.1993). "[W]e will not apply law of the case if the prior decision did not actually decide the issue in question." *Id.* at 279, 860 P.2d at 1332.

¶ 32 The only basis for the law of the case doctrine that the District urges is a prior statement by this Court that the jury verdict meant that "the clearing and channelization projects did not cause the Gillespie Dam to fail." *A Tumbling–T II,* 222 Ariz. at 523, ¶ 11, 217 P.3d at 1228. This comment interpreting the verdict has no bearing on the scope of the District's indemnity obligation. Because we stated what the verdict meant but did not consider whether that verdict was required to trigger the indemnity obligation, we decline to apply law of the case.

¶ 33 Additionally, the District seems to argue that the Dam Owners are judicially estopped from asserting a right to indemnification for their own negligence. It bases that argument on prior statements of the Dam Owners' counsel during litigation that

---

**6.** Although the indemnity does not cover intentional acts by the Dam Owners, the District does not argue any intentional acts by the Dam Owners caused the dam to fail.

the indemnity provision would only be triggered if the District's acts or omissions cause the dam to fail. We again disagree with the District.

¶ 34 Judicial estoppel is a discretionary doctrine which the court may decline to apply for equitable or policy considerations. *State v. Brown*, 212 Ariz. 225, 228, ¶ 13, 129 P.3d 947, 950 (2006). The purpose of the doctrine is to protect the integrity of the judicial process by preventing a litigant from using the courts to gain an unfair advantage. *Id.*

¶ 35 "Three requirements must exist before the court can apply judicial estoppel: (1) the parties must be the same, (2) the question involved must be the same, and (3) the party asserting the inconsistent position must have been successful in the prior judicial proceeding." *State v. Towery*, 186 Ariz. 168, 182, 920 P.2d 290, 304 (1996). "Prior success is a prerequisite to the application of judicial estoppel because absent judicial acceptance of the prior position, there is no risk of inconsistent results." *Id.* at 183, 920 P.2d at 305.

¶ 36 In this case judicial estoppel is not established for two reasons. First, there was no "prior judicial proceeding," and the Dam Owners did not succeed in their prior position. *See Decker v. Vt. Educ. Television, Inc.*, 13 F.Supp.2d 569, 573 (D.Vt.1998). Second, the Dam Owners changed their position on the legal interpretation of a contract, not a factual matter. *See Black v. Perkins*, 163 Ariz. 292, 293, 787 P.2d 1088, 1089 (App. 1989); *accord* 28 Am.Jur.2d *Estoppel and Waiver* § 68 (2012) ("Judicial estoppel bars changes in factual positions and does not extend to inconsistent opinions or legal positions."). The Dam Owners' change in legal position within a single proceeding does not support an application of judicial estoppel.

## 2. Geographic and Temporal Scope of the Indemnity

¶ 37 The District also argues that the indemnity agreement was limited to liability for acts taken only within the easement itself and not from acts arising anywhere within the flood control project. We conclude that this argument fails for two reasons. First, as noted above, the indemnity provision included any negligence by the Dam Owners for failure to properly maintain the dam. Thus, whether the District was liable for any acts it took either within the easement area or anywhere in the entire project does not affect the scope of the indemnity.

¶ 38 Second, the easement specifically states that part of the consideration for the easement is the District's agreement to "clear and maintain a 1000–foot wide corridor through the floodplain of the Salt/Gila River from 91st Avenue to Gillespie Dam." The only purpose of the 26.8–acre easement was to allow the District access to complete the overall clearing project. Additionally, the circumstances surrounding the creation of the easement indicate that the entire clearing was a single continuous project.

¶ 39 Nor do we find any error in construing the indemnification to continue beyond the date the District purchased the parcel covered by the easement. The District contends that once it purchased the servient estate (*i.e.*, the easement), the easement and the indemnity agreement were destroyed by the doctrine of merger. Under the doctrine of merger of estates of property, when a party obtains both a greater and a lesser interest in the same property and no intermediate interest exists in another, a merger occurs and the lesser interest is extinguished. *Mid Kan. Fed. Sav. and Loan Ass'n. of Wichita v. Dynamic Dev. Corp.*, 167 Ariz. 122, 129, 804 P.2d 1310, 1317 (1991).

¶ 40 Parties may opt out of the doctrine of merger. *Id.; Bowman v. Cook*, 101 Ariz. 366, 367–68, 419 P.2d 723, 724–25 (1966). We conclude the parties here did just that by agreeing that the easement remains in force until the District takes an affirmative act, through its board of directors, to destroy it:

> This easement shall be of full force and effect, and shall not be deemed to be abandoned in any respect, until [Dam Owners] ... [have] received, from [the District] or its permitted successors or permitted assigns, a resolution and fully-executed, rec-

ordable instrument terminating all rights, interests and obligations contained herein, and then all rights and interest herein granted shall cease and revert to [Dam Owners] . . . .

■ ¶ 41 The District contends merger applies because the 1991 contract of sale did not say otherwise. We disagree. When determining whether parties intend for the doctrine of merger to apply, Arizona courts look beyond the wording of instruments that are silent on the subject. *See, e.g., Mid Kan.,* 167 Ariz. at 131–32, 804 P.2d at 1319–20 (looking to price as evidence of intent to merge when agreement was silent about merger); *Bowman,* 101 Ariz. at 368, 419 P.2d at 725 (finding intent to merge based on post-transaction conduct). We look beyond the silent sale contract in this case to the easement itself for an expression of intent that merger not apply. Finding no such intent, we decline to apply the doctrine.

## II. The Notice of Claim and Statute of Limitations Arguments

¶ 42 The District contends that the judgment must be reversed because the Dam Owners failed to comply with Arizona's notice of claim statute, A.R.S. § 12–821.01(A) (2003), and the claim was time-barred. The District argues: (1) The Dam Owners failed to properly serve a notice of the indemnity claim because they merely served the notice

on counsel of record for the District; (2) The trial court erred in holding that the notice of a claim for indemnity did not need to be served before judgment had been entered against the Dam Owners; (3) The Dam Owners did not timely serve a notice on the District after they paid the underlying judgments; and (4) The Dam Owners did not file their counterclaim against the District within one year of their first attempt to serve the notice of claim. Thus, the District argues that the superior court erroneously denied its motion for summary judgment on the notice of claim issue.[7] We address only the issue of whether the court properly denied summary judgment on the timeliness and service issues.

¶ 43 The flood occurred in January 1993. The Farmers served the Dam Owners with their complaint in April 1995 and Industrial Risk allegedly served the Dam Owners in September 1995. The Dam Owners filed their notice of claim for indemnity in September 1996 as a pleading in the Farmers' damage action, mailing the notice to the District's counsel. In response to the District's motion for summary judgment on timeliness of the notice, the superior court ruled that the indemnity claim did not accrue until a judgment might be entered against the Dam Owners.

■ ¶ 44 The District did not properly present its arguments on summary judgment

7. The District also contends we should reverse the superior court's order denying its motion for judgment on the counterclaim pleadings based on insufficient notice of claim and reverse the judgment against it based on the court's failure to instruct the jury on the notice of claim issue. We decline to do so, for several reasons. First, the court properly determined that the District's arguments about service and timeliness of the notice of claim could not be determined on a motion for judgment on the pleadings because they raised facts outside the pleadings. The court denied that Rule 12 motion without prejudice to filing of a later summary judgment motion. The court's denial of the motion for judgment on the pleadings did not preclude the District from presenting evidence on those issues at trial. *See Navajo Freight Lines v. Liberty Mut. Ins. Co.,* 12 Ariz. App. 424, 428, 471 P.2d 309, 313 (1970).

Second, as to the jury instruction, the District only refers us to two lines of transcript in which the court denied a jury instruction on the Dis-

trict's notice of claim defense. The trial court stated it was denying the instruction because it already had denied the instruction. The District does not point out where in a seventeen-file box record those arguments took place. It also does not direct us to any location in the record where it introduced any evidence as to the notice of claim issues during an approximate four-week jury trial.

We note that one transcript concerning jury instructions is missing from our record. It is the appellant's duty to ensure the entire record needed to resolve the appeal is presented to the appellate court, and we assume any missing record supports the trial court's ruling. *Lindsey v. Dempsey,* 153 Ariz. 230, 235, 735 P.2d 840, 845 (App.1987). We decline to search the record for evidence relating to the notice of claim issue. *See State v. One Single Family Residence at 1810 E. Second Ave.,* 193 Ariz. 1, 2 n. 2, 969 P.2d 166, 167 n. 2 (App.1998) (noting that the court will not consider factual assertions in appellant's opening brief that are not supported by citations to the record).

dealing with improper service of the notice of claim pursuant to Arizona Rule of Civil Procedure 4.1(i). The District did not raise the service issue until its reply in support of its motion for summary judgment, and the superior court exercised its discretion not to address the issue for that reason. *See Dawson v. Withycombe*, 216 Ariz. 84, 111, ¶ 91, 163 P.3d 1034, 1061 (App.2007).[8] The District did not raise the service issue again until it filed a motion for judgment on the pleadings on the amended counterclaim, which the trial court properly denied without prejudice because it required consideration of facts outside the pleadings. The District did not file a new motion for summary judgment on the service issue and indeed did not raise the issue again until its objections to the Dam Owners' request for fees and costs, filed after the court had issued its findings of fact and conclusions of law after trial of the indemnity claim. We will not consider the District's argument that the superior court erred when the District did not properly raise the issue in a motion for summary judgment or in its joint pretrial statement or trial memorandum, but waited until after the bench trial to raise it in an objection to an award of fees and costs.

¶ 45 This leaves only whether the September 1996 notice of claim was timely. Under A.R.S. § 12–821.01(A), a notice must be served within 180 days of the accrual of a claim. The District argues the superior court erred in holding that the Dam Owners' indemnity claim accrued only when an adverse judgment was entered against them. The District contends the Dam Owners' indemnity claim accrued on service of the Farmers' and Industrial Risk's complaints, and argues the indemnity claim is barred because the Dam Owners failed to file a notice of claim within 180 days of those complaints. Alternatively, the District argues that even if the indemnity claim accrued only when adverse judgments were entered against the Dam Owners in 1998 and 2006,

the Dam Owners' September 1996 notice of claim was premature and therefore invalid.

¶ 46 We disagree with the District. When an indemnification agreement provides for indemnification for liability, the claim accrues upon entry of a judgment against the indemnitee. In *Hauskins*, 175 Ariz. at 51–52, 852 P.2d at 1235–36, we held that in the context of a settlement and covenant not to execute, the duty of indemnity for liability applies once liability is established. Similarly, in *INA*, 150 Ariz. at 253, 722 P.2d at 980, we rejected the argument that a duty to indemnify can be determined from the allegations of a complaint. In so holding, we explained that the duty to indemnify against liability arises once liability is established. *Id.* Section 12–821.01(A) provides that the accrual of a cause of action triggers the time period for serving a notice of claim. Although A.R.S. § 12–821.01(B) defines accrual to mean when the damaged party realizes he or she has been damaged and knows or reasonably should know the act which caused the damage, a liability indemnitee is not "damaged" until a judgment has been entered against it. We therefore look to the underlying common law for the triggering event—which is the entry of the judgment upon which the indemnitee is liable. Since *INA* and *Hauskins* control, we do not turn to decisions from other jurisdictions relied on by the District.

¶ 47 The District argues that under *Nikolous v. Superior Court*, 157 Ariz. 256, 756 P.2d 925 (1988), a claim for a contingent liability owed to a third party should be brought after commencement of the action and not await an actual loss. The District's reliance on *Nikolous* is misplaced. Nikolous was the defendant in a car accident. He filed a notice of claim against the City of Phoenix while the underlying litigation was pending. When the city did not act on the notice, he brought a third-party complaint against the city, arguing both indemnification and contribution on the basis that the accident had been caused by a city fire truck. The superior court dismissed the indemnity

---

8. Unlike the defendants in *Havasupai Tribe v. Ariz. Bd. of Regents*, 220 Ariz. 214, 223, ¶ 31, 204 P.3d 1063, 1072 (App.2008), the District did not raise the notice of claim issue either in its complaint or answer to the counterclaims. In its

declaratory judgment complaint, the District merely denied its duty to defend or indemnify. In its reply to the counterclaims, it merely stated that the Dam Owners had failed to comply with Titles 11 and 12 of the Arizona Revised Statutes.

claim and held that the contribution claim had not yet accrued and thus was premature. 157 Ariz. at 257, 756 P.2d at 926. The only issue before the supreme court was whether Arizona Rule of Civil Procedure 14(a) permitted a defendant to bring a contribution claim against a third-party defendant before the underlying liability had been determined. *Id.* The court held that while Rule 14(a) was aimed primarily at indemnification claims, it also applied to contribution claims and provided a procedure to have the contribution claim decided as part of the underlying litigation. *Id.* at 257–58, 756 P.2d at 926–27. It also stated that Rule 14(a) permitted a defendant to sue a third party even though the claim "does not accrue until after the time of impleading." *Id.* Thus, the court did not hold that the third-party claim at issue had accrued. As such, *Nikolous* has no bearing on whether an indemnification claim accrues before a judgment is entered against the indemnitee.

¶ 48 The District argues in the alternative that if the superior court was correct that the indemnification claim did not accrue until the April 1998 Industrial Risk judgment and the October 2006 Farmers' judgment, the September 1996 notice of claim was invalid because it was premature. We disagree.

¶ 49 The District relies on *Deer Valley Unified Sch. Dist. v. Houser (McDonald)*, 214 Ariz. 293, 299, ¶ 23, 152 P.3d 490, 496 (2007), and *Falcon ex rel. Sandoval v. Maricopa County*, 213 Ariz. 525, 527, ¶ 10, 144 P.3d 1254, 1256 (2006), in support of its argument. Neither case deals with a "premature" notice. In *Deer Valley*, the plaintiff alleged that her claim accrued in March 2005, and she filed a notice of claim in September 2005. 214 Ariz. at 294, 299–300, ¶ 2, 23, 152 P.3d at 491, 496–97. The supreme court held that the notice was substantively defective and because the statutory time in which to file a proper claim had expired, the claim was barred. *Id.* at 296–97, 299, ¶¶ 10–11, 23, 152 P.3d at 493–94, 496. *Deer Valley* relied on *Falcon*, which held that if a notice of claim is not properly served within the statutory limits, a plaintiff's claim is barred by the statute and substantial compliance is insufficient. *Falcon*, 213 Ariz. at 527, ¶ 10, 144 P.3d at

1256. However, *Falcon* only dealt with proper service of a notice of claim, not whether a premature claim satisfies the requirement. *Id.* at 526, ¶ 2, 144 P.3d at 1255.

¶ 50 Neither party has cited any cases expressly deciding whether "premature" notices of claims comply with the statute. In *Graber v. City of Peoria*, 156 Ariz. 553, 555–56, 753 P.2d 1209, 1211–12 (App.1988), we held that when a harm was continuing from a single nuisance, a timely-filed claim did not have to be amended for each successive event causing damage. In *Haab v. County of Maricopa*, 219 Ariz. 9, 13, ¶¶ 20–22, 191 P.3d 1025, 1029 (App.2008), we distinguished *Graber* and held that a notice relating to false arrest was not statutorily sufficient to cover later alleged wrongful acts that did not substantively relate to any damages from the false arrest. In *Barth v. Cochise County*, 213 Ariz. 59, 63–64, ¶ 17, 138 P.3d 1186, 1190–91 (App.2006), we held that notices of claim alleging harassment, retribution and retaliation by an employer served prior to an alleged constructive discharge were not valid because they did not give the employer substantive notice of the potential liability for constructive discharge and a meaningful opportunity to settle the claim. However, as the court in *Barth* expressly pointed out, it was not addressing whether a premature notice of claim could be sufficient because the plaintiff had not provided any theory or authority for that argument. *Id.* at 64 n. 5, ¶ 17, 138 P.3d at 1191 n. 1.

¶ 51 What we learn from these cases is that a notice of claim filed before the claim legally accrues is not valid if it does not give the public entity sufficient information on which to investigate the claim and determine whether to settle or plan for the litigation. *See Havasupai Tribe v. Arizona Board of Regents*, 220 Ariz. 214, 223, ¶ 30, 204 P.3d 1063, 1072 (App.2008) (purpose of statute is to provide government with opportunity to investigate the claim, assess its potential liability and reach a settlement prior to litigation, budget and plan). As such, the notice need not provide all facts known to support the settlement demand. *Id.* at 225, ¶ 39, 204 P.3d at 1074.

¶ 52 Here, the District does not contend that under the circumstances, the notices of claim failed to give it sufficient information to investigate, assess its liability, reach a settlement or plan and budget for the litigation and potential liability. Accordingly, we cannot say that the notices of claim that the Dam Owners filed in the lawsuits, even though filed before the claim accrued, were legally insufficient as "premature."

¶ 53 Finally, the District contends the Dam Owners' indemnity claim was barred by the one-year statute of limitations for actions against state entities under then A.R.S. § 12–821 (2003). The District argues that because three of the Dam Owners filed a notice of claim for indemnity on September 16, 1996, that is an admission their claim had accrued as of that date and therefore the counterclaims for indemnity filed in December 1998 were time-barred.

¶ 54 We disagree. Since we have held that the indemnity claim did not accrue until the 1998 and 2006 judgments against the Dam Owners, the counterclaim for indemnity, filed before the claim accrued, was not time-barred. *Dube v. Likins*, 216 Ariz. 406, 422, ¶¶ 4–5, 167 P.3d 93, 109 (App.2007) (stating in supplemental opinion that discovery rule for accrual for statute of limitations is the same as that for notice of claim purposes). The District does not argue that a complaint or counterclaim filed *prior* to accrual of the cause of action must be dismissed as time-barred.

¶ 55 The District also relies on the fact that the jury found the Dam Owners actually or constructively discovered their cause of action against the District prior to December 31, 1997. We reject this argument for a number of reasons. First, the finding is contrary to the court's determination of when the indemnity claim accrued. Second, the jury interrogatory at issue[9] was answered based on a jury instruction indicating that the statute of limitations defense applied only to two of the Dam Owners, GDI and Charter, the only two Dam Owners with claims against the District other than indemnity.

Third, the District's requested jury instruction on statute of limitations applied only to injuries to the dam or land owned by the Dam Owners, not to indemnity obligations.

### III. The superior court exercised reasonable discretion in setting the amount of expert witness fees pursuant to Rule 68.

¶ 56 Both parties challenge the superior court's treatment of expert witness fees pursuant to Rule 68. The District contends the superior court erroneously failed to: (1) Grant fees for "project management" and "expert coordination" and for an appraisal of the Dam; and (2) Award sanctions against PWUA. The Dam Owners contend the superior court erroneously failed to apportion Rule 68 sanctions based on relative amounts of the rejected offers of judgment.

### A. The Superior Court Correctly Denied Expert Fees That Lacked an Adequate Nexus to Presentation of Trial Evidence.

¶ 57 We review a superior court's award of expert witness fees pursuant to Rule 68 for an abuse of discretion. *Lohmeier v. Hammer*, 214 Ariz. 57, 62, ¶ 18, 148 P.3d 101, 106 (App.2006); *see also Hmielewski v. Maricopa Cnty.*, 192 Ariz. 1, 4, ¶ 13, 960 P.2d 47, 50 (App.1997). However, the court's interpretation of the rule is a legal issue which we review de novo. *Warner v. Sw. Desert Images, L.L.C.*, 218 Ariz. 121, 136, ¶ 49, 180 P.3d 986, 1001 (App.2008).

¶ 58 A party who rejects an offer of judgment tendered pursuant to Rule 68 and fails to obtain a more favorable judgment must pay the offering party's "reasonable expert witness fees." Ariz. R. Civ. P. 68(g). To qualify for reimbursement pursuant to Rule 68, an expert's fee must be expended on an activity reasonably calculated to produce evidence for presentation at trial. This is implicit in Rules 68's reference to an "expert *witness.*" *Id.* (emphasis added). "A witness is a person whose declaration under oath or

---

9. The jury interrogatory asked the jury "Did the DAM OWNERS actually discover or should they have discovered with reasonable diligence that they had potential claims against [the District] before December 31, 1997?"

affirmation is received as evidence...." Ariz. R. Civ. P. 43(a). Recoverable fees include the witness's time testifying at trial, as well as time spent preparing to testify. *See Levy v. Alfaro*, 215 Ariz. 443, 445, ¶¶ 13–14, 160 P.3d 1201, 1203 (App.2007).

¶ 59 In some circumstances, the fee for an expert who never testifies may be includable as a sanction pursuant to Rule 68(g). In *Scottsdale Insurance Co. v. Cendejas*, 220 Ariz. 281, 205 P.3d 1128 (App.2009), the expert in question never testified in trial because he withdrew from the case due to a health concern. *Id.* at 289, ¶ 40, 205 P.3d at 1136. However, he did testify in a deposition and a substitute expert relied on the findings of the non-testifying expert. *Id.* at ¶ 41. On that record, we held that the first expert qualified under Rule 68. *Id.* at ¶ 42.

¶ 60 Other courts dealing with this problem have reached a similar result. Oklahoma allows recovery of reasonable expert witness fees only when the claimant demonstrates that the fees were incurred preparing for and testifying at trial, but disallows fees for expert activity unrelated to the presentation of opinion evidence. *Fuller v. Pacheco*, 21 P.3d 74, 81–82 (Okla.Civ.App.2001). The Hawaii Supreme Court allowed expert witness fees for the creation of an expert's video deposition, even though the deposition was never used at trial. *Canalez v. Bob's Appliance Serv. Ctr., Inc.*, 89 Hawai'i 292, 972 P.2d 295, 312 (1999). The court reasoned that the deposition related to the expert's qualifications to testify at trial and a mid-trial decision not to present that testimony did not preclude a party from recovering the expert's fee pursuant to Rule 68. *Id.*

¶ 61 The superior court did not abuse its discretion in this case by denying expert witness fees for "project management" and "expert coordination." The superior court specifically held that Rule 68 "is not a license to use experts to perform any service counsel consider[s] helpful and then charge the opposing party for that service." We agree. The cost of expert witness services may be reimbursed pursuant to Rule 68 only if such services relate to the presentation of scientific or specialized evidence at trial. Through its discussion of the issue, the superior court

impliedly determined that the District failed to prove that the fees at issue were related to the presentation of scientific or specialized evidence. This was not an abuse of discretion.

¶ 62 In describing the tasks its expert performed, the District used phrases such as "project management" and "expert coordination," which terms are vague in this context. When the Dam Owners challenged the fees in the superior court, the District simply relied on citation to the general principle that expert fees for activities other than testifying in court may be recoverable under Rule 68. The District did not provide any explanation of what the expert did other than to say he "coordinat[ed] the various technical experts working on the case." While the District provided evidence that the expert billed for a vast number of hours, it did not identify which of those hours related to the presentation of evidence at trial. *See One Single Family Residence*, 193 Ariz. at 2 n. 2, 969 P.2d at 167 n. 2 (court will not consider issue if party fails to provide adequate citation). Given this record, we cannot say the superior court abused its discretion in denying expert witness fees for project management and expert coordination.

¶ 63 The District also contends that the superior court erroneously denied an expert witness fee for the cost of appraising the dam during the liability phase of the trial. The only citations to the record the District provides are a reference to the superior court's minute entry denying appraisal fees and a footnote to a brief filed after the superior court denied those fees giving a terse historical description of when the fees were incurred. Without a citation to the part of the record where the District defended the reasonableness of its appraisal fees before the superior court denied them, we cannot determine whether the superior court committed error based on the evidence before it. *Id.*

**B. The superior court correctly limited Rule 68 sanctions to proper parties.**

¶ 64 The District also contends that the superior court abused its discretion in

awarding sanctions only against two Dam Owners, GDI and Charter, but omitting PWUA. The District offered PWUA one dollar in its offer of judgment. The superior court's final judgment was in favor of PWUA, among other Dam Owners, but granted PWUA no award of damages.

¶ 65 The superior court correctly declined to award sanctions against PWUA because a complete assignment of its stake in the litigation rendered it an improper party to the suit. PWUA was not a real party in interest to the litigation, notwithstanding that its name was included in the caption, because it had assigned its rights in the case. "Every action shall be prosecuted in the name of the real party in interest." Ariz. R. Civ. P. 17(a). Once a party fully and completely assigns its rights in a case, it is not the real party in interest and no longer may be a party to the litigation. *See Portland Baseball Club, Inc. v. Kuhn,* 368 F.Supp. 1004, 1008 (D.Or.1971), *aff'd,* 491 F.2d 1101, 1103 (9th Cir.1974); *accord Wade v. EMCASCO Ins. Co.,* 483 F.3d 657, 675 (10th Cir.2007) (applying Kansas law and stating that "[w]here the injured party assigns all of his rights to a third party, the assignee becomes the real party in interest and the assignor can no longer pursue a claim on his own behalf"); *Purco Fleet Servs. Inc. v. Idaho State Dept. of Fin.,* 140 Idaho 121, 90 P.3d 346, 351 (2004) (stating that complete assignment makes assignee the real party in interest and precludes assignor from being a party to the litigation).

¶ 66 The Dam Owners' counterclaim specifically pled that PWUA has assigned "all of [its] right, title and interest to [its] claims and damages against [the District] to Charter." Similarly, the assignment, which was admitted into evidence, stated that the assignment is full and complete, covering "all ... right title and interest in ... any claim which [PWUA] has against [the District]." Because PWUA completely assigned its interest in the litigation to Charter, it was not a proper party in this litigation. Ariz. R. Civ. P. 17(a).

¶ 67 The superior court stated in its order that Charter and GDI were the only two parties not to recover anything, as they were the only two that did not sue for indemnity.

The superior court's jury instructions omitted reference to PWUA. The omission of PWUA was intentional. When the court specifically mentioned GDI and Charter in the instructions, it excluded PWUA. The District's counsel expressly consented to the omission. The result is that the District did not obtain a verdict adverse to PWUA. It merely obtained a verdict adverse to PWUA's assignee, Charter.

¶ 68 The District contends that PWUA should pay expert witness fees notwithstanding the assignment because PWUA was listed in the case caption as a party. We disagree. Improperly joined parties may be dropped at any stage of the litigation. Ariz. R. Civ. P. 21. Although it was listed in the pleadings and judgment, PWUA in reality had no stake in the outcome of this litigation.

### C. The superior court erred in refusing to consider apportioning sanctions.

¶ 69 The District made offers of judgment to GDI and Charter greater than the amounts they recovered on their claims against the District. The allocated offers to GDI and Charter, respectively, were approximately forty-six percent and eight percent of the total offer the District made to the Dam Owners. GDI and Charter argued that their shares of any Rule 68 sanctions should be proportional to their percentage of the allocated offer of judgment. The trial court disagreed and entered an amended judgment awarding approximately $1.7 million in double costs and expert witness fees against GDI and Charter. In their cross appeal, GDI and Charter contend that the superior court erroneously failed to apportion Rule 68(g) sanctions among the parties consistent with the allocated offer of judgment. We review interpretation of rules de novo. *Warner,* 218 Ariz. at 136, ¶ 49, 180 P.3d at 1001.

¶ 70 While Rule 68 does not require a court to allocate sanctions, it does not prohibit allocation. Accordingly, we reverse the superior court on this issue and remand to have it exercise its discretion to determine whether sanctions should be allocated proportionately to the allocated offer of judgment.

¶ 71 Rule 68(f) provides that offers to multiple offerees must be apportioned and that sanctions apply "to each offeree who did not accept the apportioned offer." Rule 68(g) does not refer to apportioned sanctions, but provides that if "the offeree rejects an offer and does not later obtain a more favorable judgment ... the offeree must pay, as a sanction, reasonable expert witness fees and double the taxable costs ... incurred by the offeror after making the offer." The purpose behind the rule is to promote settlement. *Warner*, 218 Ariz. at 137, ¶ 52, 180 P.3d at 1002.

¶ 72 We construe the two subsections of the rule to require allocation of an offer of settlement among multiple defendants, but to grant the trial court discretion to allocate sanctions. For example, in one case, the Rule 68 offer may be contingent on all parties accepting their shares of the allocated offer. All parties accept the offer except one, whose allocated share is small. Even if that party is the only one that does not succeed at trial, it might be equitable to impose all of the sanctions against that party because its rejection of the offer required the offeror to incur the additional expenses at trial. *See Amati v. City of Woodstock*, 176 F.3d 952, 958–59 (7th Cir.1999) (discussing problem of hold-out plaintiff in case requiring unanimous acceptance of offer of judgment by multiple plaintiffs). In another case, the party that rejected the offer might have not actively participated in the ensuing litigation and thus not caused any of the expenses incurred by the offeror. In such a case, a trial court could find it equitable to allocate sanctions rather than to impose all of the sanctions on that one party.

¶ 73 Here, the trial court appears to have concluded that sanctions were not allocable as a matter of law. Since Rule 68 does not prohibit allocation of sanctions, we reverse and remand to permit the trial court to exercise its discretion to determine whether sanctions should be allocated proportionate to the offers of judgment the District made to GDI and Charter.

## IV. Prejudgment Interest

¶ 74 On cross-appeal, the Dam Owners argue that the superior court erroneously denied their claim for prejudgment interest on amounts paid to settle the underlying claims and attorneys' fees. We agree that such interest applies to the settlement amount with the Farmers as of the date the settlement was approved and judgment entered but disagree that such interest applies to the attorneys' fees.

¶ 75 Whether a party is entitled to prejudgment interest is a question of law we review de novo. *Gemstar Ltd. v. Ernst & Young*, 185 Ariz. 493, 508, 917 P.2d 222, 237 (1996). Prejudgment interest on claims against a government entity is governed by A.R.S. § 12–823 (2003) ("If judgment is rendered for the plaintiff, it shall be for the amount actually due from the public entity to the plaintiff, with legal interest thereon from the time the obligation accrued...."). This statute is typically applied only in cases involving liquidated claims. *In re U.S. Currency in Amount of $26,980.00*, 199 Ariz. 291, 298–99, ¶ 25, 18 P.3d 85, 92–93 (App.2000). "A claim is liquidated if the plaintiff provides a basis for precisely calculating the amounts owed." *John C. Lincoln Hosp. and Health Corp. v. Maricopa Cnty.*, 208 Ariz. 532, 544, ¶ 39, 96 P.3d 530, 542 (App.2004). However, the amount claimed is not liquidated unless "the evidence of damages furnishe[s] data which, if believed, makes it possible to compute the amount of damages with exactness, *without relying upon opinion or discretion.*" *Pueblo Santa Fe Townhomes Owners' Assn. v. Transcon. Ins. Co.*, 218 Ariz. 13, 24, ¶ 48, 178 P.3d 485, 496 (App.2007) (emphasis added) (quoting *Banner Realty, Inc. v. Turek*, 113 Ariz. 62, 64–65, 546 P.2d 798, 800–01 (1976)); *accord Scottsdale Ins. Co.*, 220 Ariz. at 288, ¶ 33, 205 P.3d at 1135.

¶ 76 Once an underlying claim is settled, the amount of the settlement is precise. "A settlement made in an underlying lawsuit is generally liquidated with respect to subsequent indemnity claims." *Polygon Nw. Co. v. Am. Nat'l Fire Ins. Co.*, 143 Wash.App. 753, 189 P.3d 777, 797 (2008). Similarly, the entry of a judgment fixes the amount due and a claim for indemnity on that judgment is then liquidated. *Pueblo*, 218 Ariz. at 24–25, ¶¶ 49–51, 178 P.3d at 496–97.

¶ 77 Accordingly, the Dam Owners are entitled to interest based on their *Morris* settlement from the date the amount of their liability to the Farmers was approved by the trial court as reasonable and reduced to judgment. *Id.* (holding that damages pursuant to a *Damron/Morris* agreement are liquidated once the superior court completes the reasonableness hearing and prejudgment interest accrues from that time).

¶ 78 The District contends that the settlement and judgment amounts in the underlying litigation were not liquidated because the plaintiffs in those lawsuits asserted claims for unliquidated damages against the Dam Owners. However, regardless of the claims in an underlying lawsuit, once the settlement was reduced to judgment after a reasonableness hearing, a claim for indemnity based on the judgment or settlement is for a certain fixed amount, so it is liquidated. *Id.*

¶ 79 In contrast, under the reasoning of *Pueblo,* the attorneys' fees spent defending the underlying litigation are not liquidated and subject to prejudgment interest because they are subject to a reasonableness determination by the trial court. As explained *supra,* ¶ 75, a claim for damages is not liquidated unless "the evidence of damages furnishe[s] data which, if believed, makes it possible to compute the amount of damages with exactness, *without relying upon opinion or discretion.*" As we made clear in Pueblo, supra, prejudgment interest does not apply to a *Morris* settlement until reduced to judgment because such a stipulated amount is subject to a reasonableness determination by the trial court:

> [P]rejudgment interest begins to accrue when the amount of damages can be computed with exactness, not when the amount of damages still must be determined by opinion or discretion.

> When an insured and a claimant enter into a *Morris* agreement, "neither the fact *nor amount* of liability to the claimant is binding on the insurer *unless the insured or claimant can show that the settlement was reasonable and prudent* [,]" [with the burden on the insured to show reasonableness]. . . . When "damages are subject to review for reasonableness, it is the abso-

lute duty of the finder of fact to evaluate the evidence presented and determine what settlement amount the insured has proved reasonable. . . ."

*Id.* at 24, ¶¶ 48–49, 178 P.3d at 496 (citations omitted). We concluded that the amount of a judgment to be paid under a *Morris* agreement is not liquidated until the court decides in its discretion whether the settlement amount is reasonable. *Id.* at 24–25, ¶¶ 50–51, 178 P.3d at 496–97.

¶ 80 This same reasoning applies to an application for attorneys' fees. An attorneys' fees award is subject to a determination of reasonableness by the trial court. *McDowell Mtn. Ranch Cmty. Ass'n, Inc. v. Simons,* 216 Ariz. 266, 270, ¶¶ 16–19, 165 P.3d 667, 671 (App.2007). Under the reasoning of *Pueblo,* a claim for money is not liquidated if the ultimate award is subject to a discretionary reasonableness determination by the finder of fact. *Pueblo,* 218 Ariz. at 24–25, ¶¶ 50–51, 178 P.3d at 496–97. Thus, an application for an award of attorneys' fees, which is subject to a discretionary determination of reasonableness, is not liquidated until the trial court enters an order awarding reasonable fees.

## V. The superior court correctly limited the Dam Owners attorneys' fees based on an hourly rate.

¶ 81 The Dam Owners contend the superior court erroneously failed to award Prudential attorneys' fees owed under a contingent fee agreement related to enforcement of the indemnity. We disagree. The indemnity agreement does not create fee shifting as a right and the superior court was within its discretion to limit the fees it awarded pursuant to A.R.S. § 12–341.01(A).

¶ 82 Prudential submitted a contingent fee agreement to the trial court relating to its fees in presenting the indemnity claim and asked for an award of fees on that contingency basis rather than for hourly rates. Although the fees for defense of the underlying action were awarded pursuant to the indemnity agreement, the indemnity agreement does not contain a right to recover fees incurred in enforcing the agreement.

¶ 83 We begin our interpretation of a contract with the plain language. *Grosvenor*, 222 Ariz. at 593, ¶ 9, 218 P.3d at 1050. The Dam Owners rely on the only provision of the indemnity agreement specifically mentioning attorneys' fees, which states that the District agrees to pay "all costs and expenses . . . including, without limitation, any attorneys' fees and court costs incurred by [the Dam Owners] in defending against any such liability." The plain language of the indemnity agreement provides for the payment of attorneys' fees for defending claims covered by the indemnity, but not attorneys' fees incurred in enforcing the indemnity agreement.

¶ 84 Because the parties failed to contract for attorneys' fee shifting in an enforcement action, they are limited to the shifting available by law. The Dam Owners contend that the superior court abused its discretion by failing to award the full amount of fees called for in the contingent fee contract pursuant to A.R.S. § 12–341.01(A). We disagree. The amount awarded "need not equal or relate to the attorney fees actually paid or contracted." A.R.S. § 12–341.01(B). "We will not disturb the trial court's discretionary award of fees if there is any reasonable basis for it." *Orfaly v. Tucson Symphony Soc'y*, 209 Ariz. 260, 265, ¶ 18, 99 P.3d 1030, 1035 (App.2004).

¶ 85 A superior court awarding fees pursuant to § 12–341.01(A) has broad discretion to determine what fees are reasonable. *See Schweiger v. China Doll Rest., Inc.*, 138 Ariz. 183, 187, 673 P.2d 927, 931 (App.1983). A fee award calculated by a lodestar method—multiplying a reasonable hourly rate by the number of hours expended—is presumptively reasonable. *Id.* at 187–88, 673 P.2d at 931–32. The superior court's denial of the contingent fee owed by Prudential allowed compensation under the lodestar method for all hours the court approved.[10] Other than proffering a copy of the contingent fee contract and contending the superior court should consider itself bound by the contract amount of fees, the Dam Owners presented no evidence supporting the inference that the

amount derived from the lodestar method is unreasonable.

■ ¶ 86 We also reject the Dam Owners' argument that the superior court erroneously failed to enter findings of fact supporting its award of attorneys' fees. A superior court has no obligation to make specific findings of fact unless requested by the parties. *Dooley v. O'Brien*, 226 Ariz. 149, 152 n. 2, ¶ 8, 244 P.3d 586, 589 n. 2 (App.2010) (citing Ariz. R. Civ. P. 52(a)).

## VI. Attorneys' Fees and Costs on Appeal

¶ 87 Both the District and the Dam Owners request an award of attorneys' fees and costs on the appeal and cross-appeal. On the appeal, the District's request is based solely on Arizona Rule of Civil Appellate Procedure 21. The Dam Owners request an award of fees under A.R.S. § 12–341.01(A), as a matter arising out of contract (the indemnity agreement), and under Rule 21. On the cross-appeal, the District requests an award of fees under the fee provision in the indemnity agreement, A.R.S. § 12–341.01(A), and Rule 21.

¶ 88 On appeal, the District is not entitled to an award of attorneys' fees and costs both because it has not prevailed on appeal and because Rule 21 is not a substantive basis for awarding attorneys' fees on appeal. *Ezell v. Quon*, 224 Ariz. 532, 539, ¶ 31, 233 P.3d 645, 652 (App.2010).

¶ 89 The Dam Owners have prevailed on appeal and are entitled to an award of reasonable attorneys' fees and costs both under §§ 12–341 and –341.01(A) and the indemnity agreement upon timely compliance with Rule 21.

¶ 90 On cross-appeal, neither party has prevailed and we deny an award of attorneys' fees and costs.

## CONCLUSION

¶ 91 For the foregoing reasons, we reverse the portion of the superior court's judgment denying prejudgment interest to the Dam

---

10. Although most hours were approved for compensation, the superior court denied recovery for hours that were inadequately supported with documentary evidence. Neither party has argued that the superior court allowed fees for an erroneous number of hours.

Owners and setting the amounts of Rule 68 sanctions. We remand to the superior court for entry of a judgment with prejudgment interest on the *Morris* settlement as of the date it was reduced to judgment and to consider allocating the Rule 68 sanction in conformity with this opinion. We affirm the judgment in all other respects. We also award the Dam Owners their attorneys' fees and taxable costs related to the appeal, but not the cross-appeal, upon timely compliance with Rule 21.

CONCURRING: SHELDON H. WEISBERG, Judge.*

JOHNSEN, Judge, specially concurring:

¶ 92 I concur with the majority opinion in all respects except for its words of concern in footnote 5 about a possible "injustice" or "practical problem" in the fact that the settlement the superior court approved as reasonable pursuant to *Damron* and *Morris* was considerably higher than the amount the jury imposed in damages. (As the majority explains, ¶¶ 5–7, *supra,* the Dam Owners settled with the Farmers after the liability verdict but before the damages trial; the reasonableness hearing then followed after the damages verdict.) A *Damron* or *Morris* settlement represents an agreed-upon allocation of risk necessarily made based on imperfect information. The superior court here approved the settlement after a full and fair hearing in which, due to the unusual procedural posture of the case, it had the benefit of knowing the amount of the jury's damage verdict. Given that our opinion in *A Tumbling–T III* did not address this issue, we must presume that the District did not complain in that appeal that the settlement the superior court approved was not reasonable because it substantially exceeded the jury's damage award. The District likely did not object because the superior court's role in such a situation is not to determine whether the settlement closely approximates a hypothetical (or in this case, actual) jury verdict;

instead, the court must determine whether the settlement is reasonable, given all the facts, the applicable law and the resulting risk of exposure. *See MT Builders,* 219 Ariz. at 309, ¶ 35, 197 P.3d at 770. We affirmed that finding in *A Tumbling–T III;* my view is that nothing in this litigation calls into question that decision or the principles underlying *Damron* and *Morris.*