**130 Nev., Advance Opinion 9**

# IN THE SUPREME COURT OF THE STATE OF NEVADA

ROBERT GUNDERSON; PHYLLIS GUNDERSON; SHARRON LIBBY; ROSARIO LAYTON; TOMI DUREN; LINDA WATERS; JESSICA GRANT; CLIFFORD COUSER; CHARINA COUSER; DEANNA DAVIS; RICHARD T. JONES; MESSINA KLEIN; MELANIE MOORE; JOHN MENICHELLI; BERNADETTE MENICHELLI; SUZANNE ALLEN; ROBERT WEBER; KAREN KELLISON; JUAN LOPEZ; HELEN SCUNGIO; SHONNA MAYFIELD; GUNTHER R. PAUL; SHARON EPSTEIN; STEPHEN GREGORY; WENDY MURATA; VANESSA CASTER; WANDA BERKHOLTZ; DENNIS WERRA; AMANUAL ASFAHA; EDIT MOLNAR; FRANK SUTTON; GAGANATH M. PYARA; JESSE SAUNDERS; JODI MARTIN; JOSHUA DAVIS; KRISTI RODRIGUEZ; LYNN NOWAKOWSKI-BACON; JOHN NOWAKOWSKI-BACON; MARGARET DUDLEY; MICHELLE JOHNSON; MIGUEL SANTANA; DESIREE SANTANA; PATRICIA BARRETT; RANDY FERREN; PATRICK MCGOUGH; NANCY JANSEN; AND BARBARA WERRA,
Appellants/Cross-Respondents,
  vs.
D.R. HORTON, INC., A DELAWARE CORPORATION,
Respondent/Cross-Appellant.

No. 56614

FILED

FEB 27 2014

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY _____
CHIEF DEPUTY CLERK

SUPREME COURT
OF
NEVADA

(O) 1947A

7/17/14: Corrected per letter to publishers. CS

14-06400

Appeal and cross-appeal from a district court judgment on a jury verdict in a construction defect action and an appeal from an order denying a new trial. Eighth Judicial District Court, Clark County; Kenneth C. Cory, Judge.

*Affirmed in part, reversed in part, and remanded.*

James R. Christensen, Las Vegas,
for Appellants/Cross-Respondents Robert Gunderson, Phyllis Gunderson, Linda Waters, Jessica Grant, Clifford Couser, John Menichelli, Bernadette Menichelli, Robert Weber, Juan Lopez, Helen Scungio, Shonna Mayfield, Gunther R. Paul, Wendy Murata, Wanda Berkholtz, Lynn Nowakowski-Bacon, Margaret Dudley, Michelle Johnson, Patricia Barrett, Patrick McGough, Nancy Jansen, and Barbara Werra.

Sharron Libby, Rosario Layton, Tomi Duren, Charina Couser, Deanna Davis, Richard T. Jones, Messina Klein, Melanie Moore, Suzanne Allen, Karen Kellison, Sharon Epstein, Stephen Gregory, Vanessa Caster, Dennis Werra, Amanual Asfaha, Edit Molnar, Frank Sutton, Gaganath M. Pyara, Jesse Saunders, Jodi Martin, Joshua Davis, Kristi Rodriguez, John Nowakowski-Bacon, Miguel Santana, Desiree Santana, and Randy Ferren, in Proper Person.

Wolfenzon Rolle and Bruno Wolfenzon and Jonathan P. Rolle, Las Vegas; Marquis Aurbach Coffing and Jack Chen Min Juan and Micah S. Echols, Las Vegas,
for Respondent/Cross-Appellant.

BEFORE THE COURT EN BANC.[1]

---

[1]The Honorable Michael A. Cherry, Justice, and the Honorable Ron D. Parraguirre, Justice, voluntarily recused themselves from participation in this matter.

*OPINION*

By the Court, DOUGLAS, J.:

In this opinion, we address whether the district court abused its discretion by: (1) denying a motion for a new trial based on allegations of attorney misconduct; (2) not granting sanctions under NRS 17.115 and NRCP 68; and/or (3) refusing to consider apportioning sanctions. We conclude that the district court did not abuse its discretion in denying appellants/cross-respondents' motion for a new trial, but did abuse its discretion regarding the issuance and apportionment of sanctions. We hold that: (1) the district court was statutorily required to issue sanctions under NRS 17.115 and NRCP 68; (2) when a district court issues sanctions against multiple offerees pursuant to NRS 17.115 and NRCP 68, it has and must exercise its discretion to determine whether to apportion those sanctions among the multiple offerees or to impose those sanctions with joint and several liability; and (3) when sanctions are issued against multiple homeowner offerees pursuant to NRS 17.115 and NRCP 68 in a construction defect action, a district court abuses its discretion by imposing those sanctions jointly and severally against the homeowners. Accordingly, we affirm the district court's decision in part, reverse in part, and remand the matter to the district court for further proceedings consistent with this opinion.

## FACTS AND PROCEDURAL HISTORY

Appellants/cross-respondents, homeowners in the High Noon at Boulder Ranch community (the homeowners), retained experts to inspect their homes for construction defects. Based on their experts' findings, the homeowners sent respondent/cross-appellant contractor D.R. Horton, Inc., a written notice detailing alleged architectural, insulation,

waterproofing, and other defects. In response, D.R. Horton notified the homeowners of its intent to inspect the alleged defects to determine how to respond to the homeowners' notice. The homeowners then filed a complaint, seeking relief primarily under theories of negligence and breach of warranty.

After receiving the homeowners' complaint, D.R. Horton elected to repair the identified defects. Subsequently, the district court stayed proceedings on the homeowners' complaint to allow D.R. Horton to make repairs. After completing its work, D.R. Horton provided the homeowners with a formal statement of repairs. The district court then lifted the stay, and the homeowners filed an amended complaint. In response, D.R. Horton filed an answer and a third-party complaint against several subcontractors.

Before trial, D.R. Horton served individual offers of judgment on each of the homeowners based on the extent of their respective property's defects; 39 of the 40 homeowners rejected these offers and proceeded to trial.

During closing arguments, counsel for D.R. Horton and counsel for third-party defendant RCR Plumbing made multiple statements that the homeowners' counsel objected to as attorney misconduct. The district court sustained several of these objections without admonishing counsel or the jury. At the conclusion of the trial, the jury awarded verdicts for each homeowner, totaling $66,300 in damages. No individual homeowner's award exceeded his or her offer of judgment from D.R. Horton.

Following the jury's verdicts, the homeowners and D.R. Horton filed motions for costs and attorney fees. The district court

determined that D.R. Horton made valid offers of judgment and that no homeowner's award exceeded his or her respective offer. Accordingly, the district court awarded D.R. Horton post-offer costs, but declined to award it attorney fees. Despite awarding D.R. Horton post-offer costs, the district court denied both motions, stating that it was impossible to award apportioned costs and fees under the circumstances. The homeowners then filed a motion for a new trial, or, in the alternative, additur. D.R. Horton opposed the homeowners' motion and filed a countermotion for remittitur, requesting that the district court reduce the verdicts to zero. Again, the district court denied both motions. This appeal and cross-appeal followed.

In their appeal and cross-appeal, the homeowners and D.R. Horton assert a number of arguments. While we conclude that most of these arguments do not warrant specific discussion,[2] we take this opportunity to address the homeowners' argument that the district court abused its discretion in denying their motion for a new trial based on attorney misconduct and both parties' contentions that they were entitled to costs and attorney fees.

---

[2]In particular, we have considered the homeowners' arguments regarding alleged improper ex parte communications, reliance on facts not in evidence, introduction of excluded evidence, changes to the trial protocol, acceptance of late-deposited documents, the jury instructions, the motion to strike a defense expert's testimony, exclusion of certain evidence, and the denial of additur. With regard to each of these claims, we have determined that either the homeowners failed to preserve the argument or the argument lacks merit. We also conclude that by failing to make an offer of proof, D.R. Horton failed to preserve its argument that the district court abused its discretion in denying testimony from a defense witness.

## DISCUSSION

I. *The district court did not abuse its discretion in denying a new trial for attorney misconduct*

The homeowners argue that the district court should have granted their motion for a new trial because D.R. Horton's counsel repeatedly committed misconduct throughout the trial. Specifically, the homeowners claim that D.R. Horton's counsel violated RPC 3.4(e) and our decision in *Lioce v. Cohen*, 124 Nev. 1, 174 P.3d 970 (2008), by urging the jurors to "send a message" because this case was driven by attorneys and experts, the homeowners were liars, and the trial was a waste of the jury's time. The homeowners also assert that, even if the specific instances of misconduct were not independently sufficient to warrant a new trial, the cumulative effect of D.R. Horton's counsel's misconduct required the district court to grant the homeowners' motion for a new trial. We disagree.

This court reviews a district court's decision to grant or deny a motion for a new trial for an abuse of discretion. *Lioce*, 124 Nev. at 20, 174 P.3d at 982. "Whether an attorney's comments are misconduct is a question of law, which we review de novo; however, we will give deference to the district court's factual findings and application of the standards to the facts." *Id.*

Under NRCP 59(a)(2), the district court may grant a new trial if the prevailing party committed misconduct that affected the aggrieved party's substantial rights. In *Lioce*, this court discussed the applicable legal standards for reviewing a district court's denial of a motion for a new trial based on attorney misconduct. *See Lioce*, 124 Nev. at 14-26, 174 P.3d at 978-86. Under *Lioce*, this court decides whether there was attorney

misconduct, identifies the applicable legal standard for determining whether a new trial was warranted, and assesses whether the district court abused its discretion in applying that standard. *See id.* at 14-26, 174 P.3d at 978-86.

When an attorney commits misconduct, and an opposing party objects, the district court should sustain the objection and admonish the jury and counsel, respectively, by advising the jury about the impropriety of counsel's conduct and reprimanding or cautioning counsel against such misconduct. *Id.* at 17, 174 P.3d at 980; *see also Black's Law Dictionary* 55 (9th ed. 2009) (defining "admonition" as "[a]ny authoritative advice or caution from the court to the jury regarding their duty as jurors or the admissibility of evidence for consideration," or "[a] reprimand or cautionary statement addressed to counsel by a judge"). In the event of a proper objection and admonition, "a party moving for a new trial bears the burden of demonstrating that the misconduct [was] so extreme that the objection and admonishment could not remove the misconduct's effect." *Lioce*, 124 Nev. at 17, 174 P.3d at 981. If the district court overrules the objection, the party moving for a new trial must show that the district court erred in its ruling and that "an admonition to the jury would likely have affected the verdict in favor of the moving party." *Id.* at 18, 174 P.3d at 981.

An attorney's failure to object constitutes waiver of an issue, unless the failure to correct the misconduct would constitute plain error. *Id.* at 19, 174 P.3d at 982. Establishing plain error requires a party to show that "the attorney misconduct amounted to irreparable and fundamental error," resulting "in a substantial impairment of justice or denial of fundamental rights." *Id.* In other words, plain error exists only

"when it is plain and clear that no other reasonable explanation for the verdict exists." *Ringle v. Bruton*, 120 Nev. 82, 96, 86 P.3d 1032, 1041 (2004).

Finally, if misconduct is persistent or repeated, the district court must take into account "that, by engaging in continued misconduct, the offending attorney has accepted the risk that the jury will be influenced by his misconduct." *Lioce*, 124 Nev. at 18-19, 174 P.3d at 981. As a result, the district court must acknowledge that although specific instances of misconduct alone might have been curable by objection and admonishment, the effect of persistent or repeated misconduct might be incurable. *See id.* at 19, 174 P.3d at 981.

The homeowners argue that D.R. Horton's counsel violated RPC 3.4(e) by pursuing the theme that the case was driven by the homeowners' lawyers and experts. Specifically, the homeowners contend that D.R. Horton's counsel instructed the jury to disregard the evidence, that the homeowners were liars, and that the alleged defects did not exist. D.R. Horton claims that it did not violate RPC 3.4(e) and that the homeowners are precluded from making this argument now because they failed to object on these grounds at trial.

RPC 3.4(e) prohibits attorneys from:

> allud[ing] to any matter that the lawyer does not reasonably believe is relevant or that will not be supported by admissible evidence, assert[ing] personal knowledge of facts in issue except when testifying as a witness, or stat[ing] a personal opinion as to the justness of a cause, the credibility of a witness, [or] the culpability of a civil litigant . . . .

The homeowners objected to the following comment made by third-party defendant RCR's counsel during closing arguments:[3]

> There's a Special Interrogatory I'm going to ask you to find whether you still believe if there are any plumbing repairs out there. I don't believe there is. I think we repaired anything that was there.

Applying *Lioce*'s framework, we must first determine whether RCR's counsel committed attorney misconduct. In this instance, our review of the record indicates that RCR's counsel did not violate RPC 3.4(e) or commit any other attorney misconduct. Accordingly, this statement provides no basis for a new trial.

The homeowners also objected to the following statement by D.R. Horton's counsel:

> What did every homeowner say they wanted? They wanted a safe house; right? That's what they all wanted. They learned that from their expert that their house was somehow unsafe? No. None of them ever talked to their experts. They learned it from their attorneys. For what purpose? For the purpose of litigation. And now the homeowner is in the middle because Mr. Gunther is sitting here, and he's listening to our side of the story, and he's saying, "Oh, gosh. They tell me my house is unsafe."

---

[3]D.R. Horton argues that because the jury was instructed to decide the case only as between D.R. Horton and the homeowners, the argument of RCR's counsel is irrelevant in this appeal. We disagree. Regardless of the limitations imposed on the scope of the jury's decision, RCR's counsel made its remarks before the jury deliberated about the issues in this appeal, and thus, counsel's comments could have influenced that verdict.

The basis for the homeowners' objection was that D.R. Horton's attorney improperly claimed to know what Mr. Gunther was thinking. Applying the *Lioce* framework again, we first determine whether D.R. Horton's counsel's statement was attorney misconduct. D.R. Horton's counsel's statement violates RPC 3.4(e) by implicitly asserting a personal opinion as to the justness of the homeowners' case based on the statement's implication that the homeowners' attorneys unilaterally initiated this action and fabricated its foundations.

Next, we must identify the applicable legal standard. As the homeowners note, after sustaining their objection to this statement, the district court failed to admonish counsel or the jury. *Lioce* does not directly address this situation. Accordingly, we now clarify that when a district court sustains an objection to attorney misconduct but fails to admonish counsel or the jury, if objecting counsel does not promptly request the omitted admonishments, he or she must, in seeking a new trial based on the improper conduct, demonstrate that the misconduct was so extreme that the objection and sustainment could not have removed the misconduct's effect. *Cf. Lioce*, 124 Nev. at 17, 174 P.3d at 981. If the district court fails to admonish counsel or the jury after objecting counsel requests such admonishment promptly following his or her sustained objection, a party moving for a new trial must only demonstrate that "an admonition to the jury would likely have affected the verdict in favor of the moving party." *Cf. id.* at 18, 174 P.3d at 981.

Here, the homeowners must show that D.R. Horton's counsel's misconduct was so extreme that its effect could not have been removed by their objection and the district court's sustainment because their counsel failed to request admonishments where they were mistakenly omitted by

the district court. We conclude that the homeowners have not shown that the misconduct's effect could not have been removed by the objection and its sustainment. Accordingly, applying the last step in the *Lioce* analysis, we determine that the district court did not abuse its discretion in denying the homeowners' motion for a new trial.

The homeowners separately claim that D.R. Horton's counsel committed attorney misconduct by encouraging jury nullification. An attorney's arguments in favor of jury nullification constitute misconduct in part because they violate RPC 3.4(e). Jury nullification is defined as

> [a] jury's knowing and deliberate rejection of the evidence or refusal to apply the law either because the jury wants to send a message about some social issue that is larger than the case itself or because the result dictated by law is contrary to the jury's sense of justice, morality, or fairness.

*Lioce*, 124 Nev. at 20, 174 P.3d at 982-83 (alteration in original) (quoting *Black's Law Dictionary* 875 (8th ed. 2004)). An attorney making an attempt at jury nullification violates RPC 3.4(e) in two ways: (1) the attorney is either alluding to a matter that is irrelevant given the law or unsupported by admissible evidence given the facts; and (2) whether explicit or implicit, the attorney is inherently asserting his or her opinion as to the justness of a cause.

In support of their jury nullification argument, the homeowners rely in part on D.R. Horton's counsel's statement during closing arguments that, "[i]f you want to send a message to the homeowners that their houses are safe, tell them, 'I sat for 12 weeks; I listened to everything; your house is safe.'" In *Lioce*, this court concluded that the attorney made a jury nullification argument when he encouraged the jury to find in the defendants' favor regardless of the evidence to send

the message that lawsuits like the case at issue are a waste of taxpayers' money and jurors' time. *Lioce*, 124 Nev. at 21, 174 P.3d at 983. In other words, the attorney encouraged the jurors to make their decision based on something other than the law and the evidence. *See id.* In contrast to *Lioce*, D.R. Horton's counsel did not urge the jury to reject the evidence or the law when making this statement. Instead, D.R. Horton's counsel asked the jury to find that D.R. Horton was not liable based on the evidence presented. Thus, regardless of D.R. Horton's counsel's use of the phrase "send a message," counsel was not improperly encouraging jury nullification, and this argument does not provide a basis for reversing the district court's decision denying the homeowners' motion for a new trial.

Finally, the homeowners argue that the cumulative effect of D.R. Horton's counsel's misconduct justifies a new trial. To obtain a new trial based on the cumulative effect of attorney misconduct, the appealing party "must demonstrate that no other reasonable explanation for the verdict exists." *Grosjean v. Imperial Palace, Inc.*, 125 Nev. 349, 365, 212 P.3d 1068, 1079 (2009). In evaluating whether this has been demonstrated, we "look at the scope, nature, and quantity of misconduct as indicators of the verdict's reliability." *Id.* Grounds for reversing a district court's decision denying a new trial under the plain error standard will generally require multiple severe instances of attorney misconduct as determined by their context. *See, e.g., Lioce*, 124 Nev. at 8, 24, 174 P.3d at 974-75, 985 (upholding a district court's granting of a motion for a new trial where the attorney's misconduct included multiple improper attempts at jury nullification and repeated egregious and inappropriate

comments during closing arguments).[4]  Considering the homeowners' arguments as a whole, we conclude that they fail to meet Nevada's standards for reversing a district court's denial of a motion for a new trial. Accordingly, we affirm the district court's denial of the homeowners' motion for a new trial.

II. *The district court abused its discretion in refusing to issue sanctions pursuant to NRS 17.115 and NRCP 68 and in failing to apportion those sanctions among the homeowners*

In its order on the issue of costs and attorney fees, the district court determined that D.R. Horton's individual offers of judgment were valid pursuant to NRS 17.115 and NRCP 68.  The district court also found that the valid offers of judgment were rejected by the 39 homeowners involved and that none of them obtained a jury verdict higher than his or her respective offer of judgment.  Based on these findings, the district court awarded D.R. Horton post-offer costs.

Immediately following this award, the district court stated that neither the homeowners nor D.R. Horton did or could allocate any costs or attorney fees, seemingly disposing of the issues once and for all. After making this statement, the district court revived the issue of D.R. Horton's attorney fees by conducting a *Beattie* analysis and concluding

---

[4]*See also Fineman v. Armstrong World Indus., Inc.*, 774 F. Supp. 266, 269-76 (D. N.J. 1991) *aff'd*, 980 F.2d 171 (3d Cir. 1992) (granting a new trial where attorney misconduct included (1) pervasive and flagrant appeals to speculation, sympathy, outrage, and revenge from the jury; (2) repeated expressions of opinion as to the merits, credibility of witnesses, and culpability of defendant; and (3) repeated disparaging attacks on opposing counsel).

that D.R. Horton was not entitled to attorney fees under NRS 17.115 and NRCP 68. *Beattie v. Thomas*, 99 Nev. 579, 588-89, 668 P.2d 268, 274 (1983). The district court also determined that D.R. Horton was not entitled to attorney fees pursuant to NRS 18.010. Finally, for the second time, the district court stated that neither the homeowners nor D.R. Horton allocated or could allocate costs or attorney fees among the homeowners in this case, making it impossible for it to award any costs or attorney fees.

The homeowners claim that D.R. Horton's individual offers of judgment were invalid, preventing D.R. Horton from receiving costs under NRS 17.115 and NRCP 68. Conversely, the homeowners contend that they are entitled to costs pursuant to NRS 40.650. In response, D.R. Horton argues that it is entitled to costs and attorney fees under NRCP 68 and NRS 17.115 because the offers of judgment were valid, and that for the same reason, the homeowners are precluded from recovering either costs or attorney fees after they rejected the valid offers. Additionally, D.R. Horton asserts that the homeowners cannot recover costs because they failed to file the required memorandum of costs under NRS 18.110(1). D.R. Horton alternatively maintains that it is the prevailing party entitled to costs and attorney fees under NRS 18.020. The homeowners reply that D.R. Horton was not a prevailing party and therefore cannot recover under NRS 18.020.

*A.  Sanctions*

This court generally reviews a district court's decision awarding or denying costs or attorney fees for an abuse of discretion. *See Miller v. Jones*, 114 Nev. 1291, 1300, 970 P.2d 571, 577 (1998). "[W]here a trial court exercises its discretion in clear disregard of the guiding legal

principles," it "may constitute an abuse of discretion." *Bergmann v. Boyce*, 109 Nev. 670, 674, 856 P.2d 560, 563 (1993).

Because we determine that the district court's order was unclear and erroneous, we offer the following guidance. In a construction defect action, the claimant generally may only recover attorney fees and specified costs that are proximately caused by a construction defect. *See* NRS 40.655(1). Alternatively, "the court may make an allowance of [attorney] fees to a prevailing party." NRS 18.010(2). And "[c]osts must be allowed . . . to the prevailing party against any adverse party against whom judgment is rendered . . . [i]n an action for the recovery of money or damages, where the plaintiff seeks to recover more than $2,500." NRS 18.020(3).

However, "NRS 40.655 does not preclude application of the penalty provisions of NRCP 68 and NRS 17.115." *Albois v. Horizon Communities, Inc.*, 122 Nev. 409, 418, 132 P.3d 1022, 1028 (2006). Similarly, NRS 18.010 and 18.020 do not preclude the application of the penalty provisions of NRCP 68 and NRS 17.115. *See id.* Thus, when an offeree rejects a valid offer and does not obtain a more favorable judgment, NRS 17.115(4)(a) and (b) and NRCP 68(f)(1) preclude the offeree from recovering any costs, attorney fees, or interest for the period after the service of the offer and before the judgment. In such a situation, the district court must order the offeree to pay the post-offer costs incurred by the party who made the offer.[5] *See* NRS 17.115(4)(c); NRCP 68(f)(2).

---

[5]Although NRCP 68(f)(2) requires an award of "post-offer costs" and NRS 17.115(4)(c) requires an award of "taxable costs," we follow our precedent and harmonize these seemingly conflicting provisions to mean

*continued on next page . . .*

Additionally, the district court may order the offeree to pay the offeror's reasonable attorney fees pursuant to NRS 17.115(4)(d)(3) and NRCP 68(f)(2).

In determining whether to award attorney fees in the offer of judgment context, a district court must consider and weigh the following factors:

> (1) whether the plaintiff's claim was brought in good faith; (2) whether the defendant['s] offer of judgment was reasonable and in good faith in both its timing and amount; (3) whether the plaintiff's decision to reject the offer and proceed to trial was grossly unreasonable or in bad faith; and (4) whether the fees sought by the offeror are reasonable and justified in amount.

*Beattie*, 99 Nev. at 588-89, 668 P.2d at 274. In considering the fourth *Beattie* factor, whether the fees sought by the offeror are reasonable and justified in amount, the district court must consider the *Brunzell* factors. *See Shuette v. Beazer Homes Holdings Corp.*, 121 Nev. 837, 864-65, 124 P.3d 530, 548-49 (2005). The *Brunzell* factors include:

> (1) *the qualities of the advocate*: his ability, his training, education, experience, professional standing and skill; (2) *the character of the work to be done*: its difficulty, its intricacy, its importance,

---

*. . . continued*

"post-offer costs." *See McCrary v. Bianco*, 122 Nev. 102, 106-07, 131 P.3d 573, 576 (2006) (stating that regarding NRCP 68 and NRS 17.115, "the court construes the rules in harmony with the statute"); *In re Resort at Summerlin Litig.*, 122 Nev. 177, 185, 127 P.3d 1076, 1081 (2006) (determining that "where a general statutory provision and a specific one cover the same subject matter, the specific provision controls").

> time and skill required, the responsibility imposed
> and the prominence and character of the parties
> where they affect the importance of the litigation;
> (3) *the work actually performed by the lawyer*: the
> skill, time and attention given to the work; (4) *the
> result*: whether the attorney was successful and
> what benefits were derived.

*Brunzell v. Golden Gate Nat'l Bank*, 85 Nev. 345, 349, 455 P.2d 31, 33 (1969).

As a threshold matter for our analysis, we determine that the district court properly concluded that D.R. Horton's offers of judgment were valid. Although the homeowners sought costs and attorney fees under NRS 18.010, 18.020, and 40.655, each of them failed to obtain a judgment greater than his or her rejected valid offer of judgment. Accordingly, NRS 17.115 and NRCP 68 preclude those homeowners from recovering any costs or attorney fees, and we affirm the district court's denial of costs or attorney fees to the homeowners.[6] *See Sengel v. IGT*, 116 Nev. 565, 570, 2 P.3d 258, 261 (2000) (affirming a district court's correct result reached for the wrong reason).

We now consider the district court's order as it relates to D.R. Horton's motion for costs and attorney fees. At the outset, we note that the district court was required to award D.R. Horton post-offer costs under NRS 17.115(4)(c) and NRCP 68(f)(2). Additionally, in considering whether to award D.R. Horton reasonable attorney fees pursuant to NRS

---

[6]Even if the homeowners were not precluded from recovering costs by NRS 17.115 and NRCP 68, they would be for their failure to file a memorandum of costs pursuant to NRS 18.110(1).

17.115(4)(d)(3) and NRCP 68(f)(2), the district court properly identified the *Beattie* factors. The district court's analysis did not, however, consider the required *Brunzell* factors in its *Beattie* analysis. To the extent that the district court failed to apply the full, applicable legal analysis, it abused its discretion. *See Beattie*, 99 Nev. at 589, 668 P.2d at 274. On remand, the district court must award D.R. Horton post-offer costs and reconsider its attorney fees analysis as to D.R. Horton by properly applying the *Beattie* and *Brunzell* factors.[7] Additionally, the district court must follow our guidance below in determining whether to apportion issued sanctions among the homeowners or impose the sanctions with joint and several liability.

### B. Apportionment of sanctions issued under NRS 17.115 and NRCP 68

Although a district court's decision regarding an award of attorney fees is generally reviewed for an abuse of discretion, where, as here, the decision implicates a question of law, the appropriate standard of review is de novo. *See Thomas v. City of N. Las Vegas*, 122 Nev. 82, 90, 127 P.3d 1057, 1063 (2006). Whether a district court can apportion sanctions awarded under NRS 17.115 and NRCP 68 is a question of law that this court has not addressed. In considering this question, we preliminarily acknowledge that a district court's discretion includes "[t]he

_____

[7]The district court correctly ruled that D.R. Horton had no right to attorney fees under NRS 18.010 because D.R. Horton failed to obtain a monetary judgment. *Smith v. Crown Fin. Servs. of Am.*, 111 Nev. 277, 285, 890 P.2d 769, 774 (1995) (holding "that the recovery of a money judgment is a prerequisite to an award of attorney fees pursuant to NRS 18.010(2)(a)").

power . . . to determine questions to which no strict rule of law is applicable but which, from their nature, and the circumstances of the case, are controlled by the personal judgment of the court." *Goodman v. Goodman*, 68 Nev. 484, 487, 236 P.2d 305, 306 (1951) (internal quotation omitted). With this in mind, we hold that when a district court issues sanctions against multiple offerees pursuant to NRS 17.115 and NRCP 68, it has and must exercise its discretion to determine whether to apportion those sanctions among the multiple offerees or impose those sanctions with joint and several liability.

The Arizona Court of Appeals recently addressed the issue of whether a trial court was required to consider apportioning sanctions among multiple offerees in the offer of judgment context. *See Flood Control Dist. of Maricopa Cnty. v. Paloma Inv. Ltd. P'ship*, 279 P.3d 1191, 1209-10 (Ariz. Ct. App. 2012). In *Maricopa County*, the offeror made offers of judgment to two offerees in the amount of 46 percent and 8 percent of its total offer to a larger group of offerees. *Id.* at 1209. Because the two offerees failed to obtain a judgment greater than their respective offers, Arizona's offer of judgment rule permitted sanctions. *Id.* at 1208-10. The two offerees argued that their share of any sanction should be proportional to their percentage of the allocated offer of judgment. *Id.* at 1209. The trial court disagreed. *Id.* In reviewing the issue, the appellate court in *Maricopa County* recognized that Arizona's offer of judgment rule did not require or prohibit the apportionment of sanctions between offerees. *See id.* Based on this finding, the court reversed and remanded the case so that the trial court could exercise its discretion to determine whether sanctions should be apportioned based on the individual allocated offers of judgment. *Id.* at 1210.

We note that similar to Arizona's rule, our offer of judgment rule does not speak to apportionment based on allocated offers of judgment among multiple offerees. *See* NRS 17.115; NRCP 68. Like the *Maricopa County* court, we conclude that the decision of whether to apportion sanctions under NRS 17.115 and NRCP 68 among multiple offerees or to impose joint and several liability falls within the purview of the district court's discretion based on the circumstances before it. In exercising this discretion, the district court should consider factors, including but not limited to: (1) whether different offerees raise distinct issues justifying segregating the costs and attorney fees associated with the litigation; and (2) in the case of a prevailing party, whether the party entitled to costs and/or attorney fees would otherwise not likely be able to recover a substantial portion of his or her judgment. *Concord Boat Corp. v. Brunswick Corp.*, 309 F.3d 494, 497 (8th Cir. 2002).[8] We emphasize that these two factors are not exhaustive and that the district court can and should consider other relevant factors where appropriate. Having established that the district court must exercise its discretion to determine whether to apportion sanctions or impose them jointly and severally, we

---

[8]*See also White v. Sundstrand Corp.*, 256 F.3d 580, 585-86 (7th Cir. 2001) (holding eight class representatives jointly and severally liable for costs where the other class members were not given notice and opportunity to opt out of the case); *Walker v. U.S. Dep't of Housing and Urban Dev.*, 99 F.3d 761 (5th Cir. 1996) (upholding a district court's imposition of joint and several liability of attorney fees where the parties had a joint legal team and shared witnesses).

conclude that the district court abused its discretion by failing to make such a determination in this case.

Additionally, we take this opportunity to hold that when sanctions are issued against multiple homeowner offerees pursuant to NRS 17.115 and NRCP 68 in a construction defect action, a district court abuses its discretion by imposing those sanctions jointly and severally against the homeowners. When an individual brings a construction defect action, litigation costs will often exceed the recoverable amount for the defects in that individual's home. While NRS 40.655 permits an award of reasonable attorney fees proximately caused by a construction defect, it does not guarantee it. *See* NRS 40.655(1)(a). Thus, absent egregiously costly defects, a homeowner will be chilled from bringing an individual lawsuit to exercise his or her right to be compensated for less costly defects. Based on this kind of cost-benefit analysis, construction defect actions tend to be brought in groups by multiple homeowners from the same community.

One of the primary purposes of our construction defect statutory scheme is "to protect the rights of homebuyers by providing a process to hold contractors liable for defective original construction or alterations." *Westpark Owners' Ass'n v. Eighth Judicial Dist. Court*, 123 Nev. 349, 359, 167 P.3d 421, 428 (2007). Our analysis has shown that homeowners already face much uncertainty in bringing individual construction defect actions, placing great importance on preserving the reasonableness of bringing a group lawsuit for construction defects. By

requiring the apportionment of sanctions under NRS 17.115 and NRCP 68 in this context, we are seeking to ensure that group homeowner construction defect actions will not be chilled by the threat of crippling joint and several sanctions. We also note that apportionment is logical and feasible in these circumstances because each home has distinctive defects and juries issue individual homeowner verdicts. Accordingly, we determine that on remand the district court must apportion sanctions issued against the homeowners based on their individual offers of judgment.

Based on the foregoing analysis, we affirm the district court's order denying the homeowners' motion for a new trial, but we reverse the district court's order regarding the issuance of sanctions and remand the matter to the district court for further proceedings consistent with this opinion.

_____, J.
Douglas

We concur:

_____, C.J.
Gibbons

_____, J.
Pickering

_____, J.
Hardesty

_____, J.
Saitta

SUPREME COURT
OF
NEVADA

(O) 1947A